SAUNDERS, Judge.
Defendants-appellants, Brookshire Grocery Company and the Louisiana Department of Labor, Office of Employment Security (hereinafter OES), appeal from the trial court’s judgment reversing the OES Board of Review’s decision denying plaintiff-appel-lee’s claim for unemployment compensation. Defendants-appellants contend that the trial court erred when it ruled that as a matter of law there was insufficient evidence to support the Board of Review’s finding that claimant quit her employment without good cause.
For the reasons which follow, we affirm the trial court’s ruling.

FACTS

Plaintiff-appellee, Kalita Gray (hereinafter GRAY), was employed by Brookshire Grocery Store (hereinafter BROOKSHIRE) at its Natchitoches, Louisiana, location. She was employed by BROOKSHIRE as a cashier for approximately 15 years, from May 9, 1977, to April 11, 1992. At the conclusion of her employment on April 11, 1992, GRAY was making $10.50 per hour and working 30 to 35 hours per week. Prior to February, 1992, GRAY frequently helped scan or change the prices of merchandise one day a week. At a meeting held in February, 1992, at the request of GRAY, BROOKSHIRE assigned the scanning duties to someone else.
On Saturday, April 11, 1992, GRAY called BROOKSHIRE to check on her work schedule for the following week. Harry Gongre, co-manager of BROOKSHIRE’S, told her that he needed her to help scan on Monday, April 13, 1992. Gongre explained that she *1286 would be needed because they were behind on their stocking of inventory. When GRAY told Gongre that she would not scan, he told her to think about her decision and return his call in about an hour. About thirty minutes later, GRAY called back and told him that she would not scan. Gongre responded by telling GRAY not to come in as regularly scheduled or on the special day that the scanning was scheduled. GRAY never reported back to work again.
In filing for unemployment compensation on April 22, 1992, GRAY claimed that she resigned her position at BROOKSHIRE because the scanning coordinator under whom she had to work was moody and the scanning work was too stressful. OES notified GRAY on May 13, 1992, that her claim for unemployment compensation was denied. OES found that she failed to follow a reasonable request of her employer and was discharged for that misconduct in accordance with LSA-R.S. 23:1601(2).
GRAY appealed the OES ruling through the appeal’s tribunal or administrative judge. After a hearing on the matter, the administrative judge ruled on June 10, 1992, and reversed the initial OES agency ruling. The administrative judge found, in accordance with LSA-R.S. 23:1601(1), that GRAY should be denied unemployment benefits because she left her employment without good cause. GRAY appealed that ruling through OES’S Board of Review (hereinafter BOARD). After reviewing the record in this matter, the BOARD ruled on August 19,1992. Adopting the administrative judge’s finding of fact, it ruled that the administrative judge had properly decided GRAY’S case, thereby, affirming the administrative judge’s finding of fact and legal conclusion.
GRAY appealed the BOARD’S decision in the trial court. On April 13, 1993, the trial court found that the BOARD’S finding of fact and ruling, as a matter of law, was not supported by sufficient, legal or competent evidence. The trial court then reviewed the record and re-evaluated the testimony and found that an agreement did exist between GRAY and BROOKSHIRE wherein GRAY would no longer have to scan merchandise as part of her normal employment duties with BROOKSHIRE. Accordingly, the trial court found that GRAY had good cause in voluntarily leaving her employment when BROOKSHIRE required her to scan on April 13,1992. The trial court ruled that she was eligible and entitled to unemployment benefits from April 11, 1992, to August 30, 1992.
OES and BROOKSHIRE appeal the trial court’s judgment and contend that there was legal, competent, and sufficient evidence to support the BOARD’S finding, and therefore, the BOARD’S finding of fact is conclusive and cannot be disturbed by the trial court.

1. Issues Presented

1) Whether the trial court erred as a matter of law when it did not find legal, competent, and sufficient evidence to support the BOARD’S finding of fact.

II. Law and Argument

In reviewing the case before this court, we first recognize:
“Under the provisions of LSA-R.S. 23:1634(B)[1] our judicial review must be confined to questions of law. The findings of fact of the Board of Review are conclusive if supported by sufficient evidence and in the absence of fraud. Cox v. Lockwood, 373 So.2d 246 (La.App. 4th Cir.1979); Washington v. Summit, 457 So.2d 50 (La. *1287 App. 4th Cir.1984). Our review does not entail the weighing of evidence, drawing of inferences, re-evaluation of evidence or substituting the views of this court for those of the Board of [RJeview as to the correctness of the facts. Washington, supra, at 52. However, there must be legal and competent evidence to support the factual findings on which the administrative determination turns. Banks v. Administrator of Dept. of Employment Security, 393 So.2d 696 (La.1981). Moreover, if the determination made does not meet ‘a threshold test of reasonableness,’ it is erroneous as a matter of law. Banks, supra, at 699.”
Washington v. Whitfield, 521 So.2d 542, 544-45 (La.App. 4th Cir.1988).
Defendants-appellants, OES and BROOK-SHIRE, do not come before this court requesting us to re-evaluate the factual findings, but rather to review whether the factual findings and legal conclusions of the BOARD were supported by competent, legal, and sufficient evidence. In addition, defendants-appellants ask this court to review whether the BOARD’S finding meets the threshold test of reasonableness.
We have reviewed the record and find that factual findings of the BOARD were supported by legal, competent and sufficient evidence. A review of the record developed at the hearing before the administrative judge and adopted by the BOARD establishes clearly that an agreement between BROOK-SHIRE and GRAY existed. At a meeting held in February of 1992, an agreement was struck between the parties wherein BROOK-SHIRE assigned the task of scanning to someone else.
At the hearing before the administrative judge, GRAY and three BROOKSHIRE employees, Lonnie Casie, manager, Harry Gongre, co-manager, and Mike Cimino, assistant manager, testified. After hearing then-testimony, the administrative judge, consistent with the testimony adduced at that hearing, specifically stated in his findings of fact:
“Prior to February, 1992, the claimant [ (GRAY) ] helped scan or change the prices on merchandise a day or so a week. She did not like the job, and in February, 1992, Mr. Lonnie Casey, Store Manager, assigned it to another worker.”
We hold that the administrative judge’s findings of fact, as stated above, are reasonable and supported by sufficient, legal, and competent evidence. The administrative judge made its findings of fact from sworn direct testimony of GRAY, and in particularly, BROOKSHIRE’S managers. The testimony concerning the meeting, the agreement, and the reasons behind the agreement are consistent and uncontroverted.
In referring to the meeting of February, 1992, Mr. Gongre, BROOKSHIRE’S manager testified:
Gongre: “Kilita [GRAY] came to us, asked us could she get off the pricer, and I told her and Mr. Semmeno (phon) [ (i.e., Cimino) ] told her, you know, ‘Give us time, we’ll see what we can work out’. And, in about a week or two weeks, we got Brent to start doing [it] with Jodi, and if I told Kilita that I would never put her back on there, I don’t remember it. I don’t think I did, ’cause there are some situations that comes up, you’ve gotta use somebody that, you know, what’s going on.”
In addressing why GRAY approached management to relieve her of her scanning duties, Gongre stated:
Gongre: “Other than she didn’t like to do it, it made her nervous or something similar to that. I don’t know.”
In response to questions from a representative of BROOKSHIRE’S interest, Mr. Diso-tell, and BROOKSHIRE’S assistant manager, Mr. Cimino, stated:
Disotell: “Had she ever expressed any sort of displeasure to you about doing this job?
Cimino: Not so much as the job. I think it was more that the person she was working with.”
The record further supports the BOARD’S factual findings. In a conversation with *1288 Gongre concerning BROOKSHIRE’S request that she scan, GRAY stated in her testimony:
[GRAY]: “And, um, I told him, I said, T understand that I’m to scan Monday”, and he [ (Gongre) ] said, ‘Well, you know, we’re in a tight, na na (sic) and we need you to do this[,’] and I said, ‘But we had an agreement that I would not be doing that anymore.’
Judge: What did he say?
[GRAY]: And he just kept trying to say that I was the only one that could do it.”
In further support of the meeting February of 1992 and agreement, GRAY stated under cross-examination by Mr. Disotell:
Disotell: “Ms. Gray, you just stated a while ago that in February you had a meeting with all the managers—
[GRAY]: Uh-huh.
Disotell: —is that including Mr. Gongre?
[GRAY]: Uh-huh. And Mr. Gongre, Mr. Casey, Mr. Cimino and another assistant manager and the head office cashier.
# ⅜ ⅜ ⅜ ⅜ ⅜
Disotell: Okay. But, now, did Mr. Casey actually tell you specifically that you would never have to scan anymore?
[GRAY] I don’t know if he used those exact words. When I said, ‘Please don’t ask me’, and I said, ‘Please don’t ask me. I cannot do it’. Mr. Casey said, ‘Okay. Okay. If we need help we’ll just call it out of Shreveport, because that’s what the lady was there for.’
Disotell: But you say he definitely told you that you would not have to scan anymore? Is that what you said?
[GRAY]: I don’t know if he used those words. No, I don’t know that he used those words.”
Lonnie Casey, assistant manager of BROOKSHIRE’S Natchitoches, Louisiana, location testified at the hearing under questioning by GRAY, en propre personne, and by the administrative judge:
[GRAY]: “Okay. Are you [ (Casey) ] aware of our meeting in February when we were all in the back room, all four of you and (inaudible)—
Casey: That’s the little incident, right?
[GRAY]: And after we talked about the little incident in February and got that cleared up, either Harry or Don, I don’t recall which one, asked me about the scanning deal again [(emphasis added)]. I mean, would I ever help out should the need arise and I told them, no, that I couldn’t, I wouldn’t and, you know, and that I would have to quit. I would give notice if they insisted. And you intervened there and said, ‘Well, there would really be no need because there was a relief out of Shreveport that y’all could get ’cause that’s what she was there for and she would be the one to help out.
⅜ ⅜: ⅜ # ⅜ ⅜
Judge: Mr. Casey did you make that remark?
Casey: I probably did. I don’t remember, but I, we at that time, we did have a girl in Shreveport that was doing work from store to store.
Judge: To help with scanning?
Casey: Yes, sir.
⅜ ⅜ * ⅜ ⅝ ⅝:
Disotell: But it was a job that she had done regularly for some time and you took her off of it.
Casey: Right.
Disotell: But, you’re stating under oath that you did not specifically tell her that she would never have to do this job any more?
Casey: I don’t think I told her she would never have to do it again, but I probably told her that she wouldn’t be the scanning coordinator ’cause they had one in Shreveport.”
Defendants-appellants point out that because the administrative judge denied GRAY *1289 unemployment benefits, he must have implicitly ruled that the facts did not support a ruling that GRAY had good cause to leave her employment. This court does not find it necessary to search out implicit or secret findings of fact when they are so expressly stated in the ruling as in the case before this court. We find legal, competent, and sufficient evidence to support that finding of the BOARD, and hold that its finding is conclusive and cannot be disturbed judicially.
In view of the BOARD’S findings of fact, we next rule whether as a matter of law the action taken by the BOARD was justified under the law. In their agreement, we note that BROOKSHIRE recognized that another BROOKSHIRE employee, with whom GRAY had to work during her scanning duties, was the source of GRAY’S stress during scanning. While it is clear that the administrative judge found that an agreement was reached, the terms of the agreement are unclear. Although BROOKSHIRE may not have agreed to relieve GRAY forever of her scanning duties, the record clearly indicates that they agreed that as part of her normal duties BROOKSHIRE would not require her to scan under conditions that would be stressful.
In view of the findings of fact, we find that the BOARD’S action, denying GRAY unemployment benefits, was not justified under the law. We hold that BROOKSHIRE violated its agreement with GRAY when they demanded that she scan on April 13, 1992. We find that this demand by her employer was a substantial change in her normal duties and contrary to their agreement of February, 1992. Accordingly, we affirm the trial court’s finding that she left her employment for “good cause,” and therefore, she is eligible and qualified to receive unemployment benefits in accordance with LSA-R.S. 23:1601(1).

Conclusion

For the foregoing reasons, we affirm the trial court’s granting GRAY unemployment benefits, and finding that she left her employment for “good cause,” and therefore, she is eligible and qualified to receive unemployment benefits in accordance with LSA-R.S. 23:1601(1). Costs of these proceedings to be paid by defendant-appellant, BROOK-SHIRE.
AFFIRMED.

. "In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. No additional evidence shall be received by the court, but the court may order additional evidence to be taken before the board of review, and the board of review may, after hearing such additional evidence, modify its findings of fact or conclusion, and file with the court such additional or modified findings and conclusions, together with a transcript of the additional record.... An appeal may be taken for the decision of the district court to the circuit court of appeal in the same manner, but not inconsistent with the provisions of this Chapter, as is provided in civil cases.”